**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHN MOMOT,

        Plaintiff,

  vs.                                    1:14-CV-01527
                                                  (TJM/TWD)

MARY ELLEN DZIARCAK, and
CYNTHIA WAGNER,

        Defendants.

---

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


**DECISION and ORDER**

**I. INTRODUCTION**

    Plaintiff JOHN MOMOT commenced this action *pro se* asserting claims pursuant to 42 U.S.C. § 1983. Presently before the Court are motions to dismiss brought by Defendants MARY ELLEN DZIARCAK ("Dziarcak") and CYNTHIA WAGNER ("Wagner") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. #6.

**II. BACKGROUND**

    Plaintiff submits a complaint pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights. His claims stem from his former employment with the Daughters of Sarah Nursing Center ("DSNC") beginning on March 8, 2011 and ending on March 30, 2012. Specifically, Plaintiff alleges that Defendant Dziarcak, Assistant Nursing Director at DSNC, unlawfully

terminated him; denied him his right to disability accommodation; and retaliated against him by "fabricat[ing] disciplinary notices" which allegedly damaged his reputation. Dkt. #1 at 6. Plaintiff alleges that Defendant Wagner, Payroll Benefits Manager at DSNC, participated in his unlawful termination and denied him his right to a disability accommodation. Id. Although not referencing any statute, Plaintiff also claims DSNC maintained a hostile work environment and unsafe work conditions. Dkt. #1.

Additionally, Plaintiff purports several claims for the first time in his reply affidavit, including: extortion, perjury, intentional infliction of emotional distress, negligence, discrimination on the basis of disability, violation of his First Amendment rights, and violation of his rights under the Equal Protection Clause. Dkt. #15. The Defendants move for dismissal as to all claims on the basis that they are not state actors for purposes of § 1983. Dkt. #6-2. Defendants argue in the alternative that Plaintiff's Complaint is void of any allegation of a violation of a constitutional right as required by the law. Id.

**III. FACTS**[1]

Plaintiff, a 57 year old Caucasian male, began working part-

---

[1] The facts are taken from the complaint. Because of the Court's ruling on this matter, the Court also cites to facts alleged by the parties in other filings as a means of demonstrating that Plaintiff may be able to plead a cognizable claim in an amended complaint.

2

time for DSNC in Albany, New York on March 8, 2011 as a Certified Nursing Assistant ("CNA"). Dkt. #1 at 3. Plaintiff began work in DSNC's Gold Unit. Dkt. #1 at 3. Plaintiff alleges in his complaint that, "from [the] beginning," he had problems getting assistance from his coworkers when he found it necessary to comply with safety rules. Id. Plaintiff complains that the management of DSNC instructed him to take care of patients "despite [the fact that] they were eas[ily] agitated or extremely heavy." Id. Plaintiff cites these instructions and incorrect patient care plans as the cause of two alleged "accidents" he had at work. Id.

After allegedly complaining to the DSNC management twice, Plaintiff contends that management "started hating [him] for [that] reason and [for not] having...full control over the CNA team from Gold Unit." Dkt. #1 at 3. The Defendants argue that Plaintiff made one complaint while employed at DSNC. Dkt. #6-2 at 6. Defendants allege that on September 30, 2011, Plaintiff told a Nurse Manager that he was not receiving help from staff when needed. Id. According to Defendants, the Nurse Manager and Plaintiff "decided that going forward, Plaintiff's assignment sheets would indicate which staff members would be available to assist Plaintiff when he needed help. It was also agreed that they would meet again the following week to review how Plaintiff was doing with the changes." Dkt. #6-2 at 7. Plaintiff and

Defendants agree that on October 7, 2011, "[Nurse Manager] and Plaintiff met again and Plaintiff reported that things were better and that staff was helping him when needed." Dkt. #6-2 at 7. The Defendants note, however, that the nurses who worked with Plaintiff reported that, although things did seem better with Plaintiff, he only asked certain individuals for help and would ignore other available staff. Id. Plaintiff contends that his female "black and Spanish [coworkers] avoided to help [him] because of [his] sex, age,...nationality, racial and cultural differences." Dkt. #1 at 3.

*Plaintiff's first accident*

Defendants allege that on October 22, 2011, Plaintiff refused to take an assignment from a nurse and "began to argue loudly with the nurse...caus[ing] a scene in front of the residents and other staff members." Dkt. #6-2 at 6. Defendants contend that,

> despite the staff's efforts to reason with him, Plaintiff would not compose himself and continued to refuse the assignment. Due to Plaintiff's inability to control himself, [the] Nursing Supervisor...was asked to speak to Plaintiff. Plaintiff stated to [the Nursing Supervisor] that his arm hurt because of an assignment he had done the previous Friday.

Id. Defendants claim that since Plaintiff did not have medical documentation stating that he was unable to perform his job functions as expected by DSNC, the Nursing Supervisor instructed Plaintiff to see a doctor before he could return to work. Dkt.

4

#6-2 at 6.

In response to Defendants' contentions, Plaintiff claims that he was only given the particular assignment because it was too difficult for another CNA to complete; completing the assignment, according to Plaintiff, would have meant acting "against written safety rules." Dkt. #15 at 5. From Plaintiff's perspective,

> the nurses in charge provoked the scene saying that I must accomplish the assignment without extra help... they involved me in unpleasant conversation at [the] nursing station to get [an] argument against me. They were better oriented than I was about the rules in the facility because they worked [t]here many years but they worsen[ed] the situation to get expected effect.

Id.

Defendants argue that, following the incident that had just occurred, Plaintiff refused a second assignment and was thus written up on October 25, 2011, "for both the inappropriate conduct when he argued loudly with his supervisor and for his insubordination by refusing to complete two assignments."[2] Dkt. #6-2 at 6. According to Defendants, "the warning clearly advised Plaintiff that further incidents such as what occurred on October 22, 2011 could lead to termination." Id.

---

[2]Defendants also note in their motion that Plaintiff received two additional written counselings on July 11, 2011 and September 17, 2011, respectively, because he: (1) failed to respond to a call bell in a timely manner (56 minutes); and (2) responded to a resident's call bell but did not provide the resident with the necessary care.

Defendants claim that Plaintiff met with Defendant Wagner on March 23, 2012 and informed her that he could not work because his arm hurt. Dkt. #6-2 at 6. Wagner informed Plaintiff that he needed to provide DSNC with a medical note that listed his work restrictions, if any. Dkt. #6-2 at 7. Plaintiff returned with a medical note that stated that Plaintiff could not lift more than twenty-five pounds and would need assistance to lift or "tackle" a resident that weighed 150 pounds or more. Id. Plaintiff was told he could not return to work until he was released to full duty "given the nature of the job duties of a CNA." Id.

*Plaintiff's second accident*

On March 30, 2012, Plaintiff returned to DSNC and met with Defendant Wagner, Defendant Dziarcak, and the former Director of Human Resources. Dkt. #6-2 at 7. During the meeting, Plaintiff requested that he be provided with an accident report form for an inguinal hernia injury that occurred "possibly on March 16, 2012 or earlier." Dkt. #15 at 24. Defendants claim that Plaintiff provided them vague responses when they asked Plaintiff about the incident. Dkt. #6-2 at 8. Defendants claim they then explained the reporting policy to Plaintiff and asked Plaintiff why he had not reported the incident when it occurred. Dkt. #6-2 at 8. Defendants argue that Plaintiff stated that he did not report the incident because he was not in pain at that time. Id. However, Plaintiff argues:

> I could not answer them. I was unconscious when [the
> injury] happened but it happened in [an] unsafe work
> environment in the [Defendants'] facility, I knew. I
> was pressed by them to work with heavy and agitated
> patients in spite of the safety nursing rules[.] When I
> exercised my rights [Defendants] turned it [so] that I
> was argumentative and belligerent. Dziarcak terminated
> my employment...to avoid any accommodation for [my]
> disability.

Dkt. #15 at 9.

Plaintiff also refers the Court to his "Unemployment Insurance Appeal," Dkt. # 15 at 24, where he claimed that on March 17 and 18, 2012, he worked with no restrictions as he was unaware of any injury; however, on March 20, 2012, he had an appointment with Dr. Madala where she told him he had an inguinal hernia, and suggested that "work with [a] heavy patient caused it but the date [was] unknown." Dkt. #15 at 11. Plaintiff claims that he did not report the injury in compliance with DSNC policy because he was "unaware of the injury until Dr. Madala stated it." Dkt. #15 at 11.

Defendants state that, because Plaintiff failed to provide specifics about the alleged accident and he could not provide evidence of an actual injury, they denied Plaintiff's request for the incident report. Id.

Following this denial, Plaintiff allegedly "became belligerent and argumentative as he had done in October 2011. Due to his conduct, Plaintiff was told to leave Dziarcak's office but he refused." Dkt. #6-2 at 8. Defendants cite this "inappropriate

7

behavior on the part of Plaintiff" as the reason he was terminated "for his insubordination and failure to report his alleged accident as required by DSNC's policy." Dkt. #6-2 at 8.

Plaintiff argues that Defendant Dziarcak made false reports about his work performance to "get revenge" when he "exercised his civil rights." Dkt. #15 at 11. He also states in his reply to Defendants' motion to dismiss that,

> Dziarcak is responsible for my unlawful termination, entire harm, and discrimination at work that occurred to me in spite of the fact that I complained constantly to support my worker's and civil rights to avoid further problems[.] [D]efendants and their subordinate workers...hated me and they looked for any pretext to retaliate by making unjustified notices about my work performance to clear [their] own responsibility for unfriendly and unsafe work at the facility.

Id. He admits that Dziarcak is not a state actor for the purposes of § 1983, but instead argues that her Registered Nursing Licence makes her "responsible for her conduct before [New York State] Boards" and, in addition, that

> There is an agreement between Defendants and state actor to deprive plaintiff of constitutional rights, e.g. double rules at work not controlled but covered by the arbiters [to] whom I complained (NYSDHR Investigator, Judge Protano, agency that verif[ies] policy of the Employer, Labor Department that controls work environment and safety work).

Dkt. #15 at 3, 11. This is the only explanation Plaintiff offers regarding any type of state involvement in relation to his claims.

**IV. LEGAL STANDARD**

Defendants have filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). See dkt. # 6. Defendants argue that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw ... all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*.(quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

When assessing the sufficiency of a complaint, particular deference should be afforded to a *pro se* litigant. *Pro se* complaints merit a generous construction by a Court determining whether they state a cognizable cause of action. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'")(quoting *Estelle v. Gamble*, 429 U.S. 97, 106

(1976)(internal quotations omitted)). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

## V. DISCUSSION

Plaintiff brings his claim under 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, [plaintiff] must establish that he was deprived of a right secured by the Constitution or laws of the United States, and the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). No action exists for "'merely private conduct, no matter how discriminatory or wrongful'" *Id.* (quoting *Blum v. Yaretsky*, 334 U.S. 1, 13 (1948)). To establish state action, Plaintiff must show that the person who caused his constitutional deprivation "'may fairly be said to be a state actor.'" *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014)(quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003)). State action requires a showing that "the 'allegedly unconstitutional conduct is fairly attributable to the State.'" *Id.* (quoting *Sullivan*, 526 U.S. at 50). When a plaintiff contends

that a private actor violated his rights, the plaintiff proves state action "by demonstrating that 'there is such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id*. (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

To determine whether the behavior can be attributed to the state, the Court must "[identify] 'the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity.'" *Id*. (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)). In making this determination, Courts employ a number of factors, including "[t]hree main tests[.]" *Fabrikant*, 691 F.3d at 207. Those tests are:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the sate, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test').

*Id*. (quoting *Syblaski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257 (2d Cir. 2008)).

In order to make out a claim for state action under the "compulsion" test, a plaintiff must show that the state actor "exercised coercive power or ... provides such significant encouragement, either overt or covert, that the choice must in

law be deemed to be that of the State." *Blum*, 457 U.S. at 1004, 102 S.Ct. 2777. (citations omitted).

Plaintiff has not alleged any facts which indicate that a state actor coerced or encouraged the Defendants. Plaintiff argues that Defendants, in their individual capacity, terminated him "to avoid any accommodation for my disability." Dkt. #15 at 9. Plaintiff makes no mention that his termination was the result of coercion from a third party state actor. His claim, therefore, fails the "compulsion" test.

To prevail under the "joint action" test, Plaintiff must show that "[t]he State has so far insinuated itself into a position of interdependence with [Defendants] ... that it must be recognized as a joint participant in the challenged activity." *Burton*, 365 U.S. at 725, 81 S.Ct. 856. Here too, Plaintiff fails to allege that the state has any type of interdependent relationship with Defendants that they could be considered joint participants. Therefore, Plaintiff also fails to meet the requirements of the "joint action" test.

Finally, to prevail under the "public function" test, Plaintiff must show that Defendants' functions as providers of nursing care are "'traditionally the *exclusive* prerogative of the State.'" *Rendell-Baker*, 457 U.S. at 842, 102 S.Ct. 2764 (emphasis in original; citation omitted). Defendants' roles as Assistant Nursing Director and Payroll Benefits Manager are not

traditionally *exclusive* prerogatives of the state. *See Blum v. Yaretsky*, 457 U.S. 991, 1012 (1982)(decisions made in the day-to-day administration of a nursing home are not traditional and exclusive prerogatives of the State). Plaintiff thus fails to meet the "public function" test as well.

The plaintiff has made no allegations that the defendants were acting under color of state law when the plaintiff suffered the alleged violations of his constitutional rights. To the contrary, Plaintiff admits "the Defendants are not state actors." Dkt. #15 at 3. He instead argues that Dziarcak's New York State Registered Nursing License classifies her as a state actor. Plaintiff is mistaken. The presence of state regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action under § 1983. *See Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 268 (2d Cir. 2014)(statutes and regulations demonstrate that New York is involved in licensing of healthcare organizations, but that fact alone is insufficient to support a finding of state action); *Doe v. Rosenberg*, 996 F.Supp. 343, 356 (S.D.N.Y. 1998)(medical licensing and regulations are insufficient to transform defendants into state actors for § 1983 purposes). Plaintiff has thus failed to allege that a state actor deprived him of his constitutional rights as required by § 1983. For this reason, the Court will dismiss Plaintiff's § 1983 claim

with prejudice because amendment of the complaint would be futile. However, the Court will not dismiss Plaintiff's entire claim with prejudice.

The facts alleged in Plaintiff's complaint suggest that the actions of which complains fall in the realm of the rights secured by anti-discrimination law rather than violations of his constitutional rights. The Court will dismiss the complaint with leave to replead in a proper fashion any claims that Plaintiff may have under federal anti-discrimination law, such as the Americans with Disabilities Act, the Age Discrimination in Employment Act, Title VII, and the Equal Pay Act.[3] Plaintiff also contends in his reply brief an Equal Protection claim, a First Amendment claim, and several tort claims which are subject to state law. Those claims are not properly before the Court because they are not raised in Plaintiff's complaint. *See* dkt. #15. The Court declines to offer any opinion on the suitability of those claims as they are not presently before the Court.[4]

---

[3]The Court notes that individuals generally cannot be sued under federal anti-discrimination law, though employers can. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); *See also Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003)(individual actors not subject to Title VII liability in their personal capacities).

[4]On July 29, 2015, Plaintiff filed a documented styled a "motion for restated relief." See dkt. # 22. That document cites a number of statutes that allegedly provide a basis for damages in this case. In light of the Court's opinion here, that motion will be denied. Plaintiff will have an opportunity to plead causes of action in his amended complaint that address such

## VI: CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss, dkt. # 6, is hereby GRANTED, and all claims against these defendants are DISMISSED. Any claims brought pursuant to 42 U.S.C. § 1983 against the moving Defendants are dismissed with prejudice. Plaintiff may file an amended complaint within 30 days, however, setting forth certain claims as addressed more particularly above. The failure to file an amended complaint within this time frame will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against Plaintiff on these claims without further order by the Court. Plaintiff's motion for restated relief, dkt. # 22, is hereby DENIED.

**IT IS SO ORDERED.**

Dated: August 4, 2015

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

claims to damages.