**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

JOHN MOMOT,

                Plaintiff,

    vs.                                                1:14-CV-1527 (TJM/TWD)

MARY ELLEN DZIARCAK, et al.,

                Defendants.

**Thomas J. McAvoy,
Sr. U.S. District Judge**

## DECISION and ORDER

Plaintiff John Momot commenced this action *pro se* asserting claims pursuant to 42 U.S.C. § 1983. Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint. See dkt. # 33. The Court will decide the issue on the submissions and without oral argument. For the reasons stated below, the motion will be granted.

**I. BACKGROUND**

This case arises out of Plaintiff's employment as a Certified Nursing Assistant ("CNA") at Defendant Daughters of Sarah Nursing Center ("DSNC") in Albany, New York. See Amended Complaint ("Amended Cmplt."), dkt. # 30, at 1. Plaintiff is a 60-year-old white male. Id. at ¶ 1. Plaintiff worked for the Nursing Center from March 8, 2011 until his termination on March 30, 2012. Id. at ¶ 3. He alleges that he lost his job due to discrimination. Id. Plaintiff contends that, though qualified for his CNA position,

the Nursing Center breached workplace safety rules, maintained a hostile work environment, and failed to respond to his warnings about the work environment. Id. at ¶ 4. He alleges that he made Defendant aware of a hernia injury he suffered and was dismissed shortly thereafter. Id. at ¶ 5.

Plaintiff alleges in his Amended Complaint that he was fired soon after unsafe working conditions caused him to develop an inguinal hernia.[1] Id. at ¶ 6. The hernia, he insists, occurred because other workers refused to help him with his job on account of his "race, national origin, culture, and age." Id. He contends that Defendants conspired to ensure that the meeting that led to his firing would cause him to be "argumentative and belligerent with them so it [would] be a good cause for my termination." Id. Though Defendants claimed that he had become belligerent, Plaintiff denies that he engaged in such behavior. Id.

Plaintiff filed his initial Complaint pursuant to 42 U.S.C. § 1983 in this Court on December 17, 2014. See dkt. # 1. Plaintiff named as defendants only Mary Ellen Dziarcak and Cynthia Wagner. Id. On August 4, 2015, the Court granted the Defendants' motion to dismiss, finding that Plaintiff had failed to allege that either of the two Defendants acted under color of state law. See dkt. # 24. The Court permitted Defendant to file an Amended Complaint. When Plaintiff did so, Defendants filed the instant motion to dismiss. The parties briefed the issues.

**II. LEGAL STANDARD**

---

[1]As Plaintiff proceeds *pro se*, the Court is obligated "to conduct [its] examination with 'special solicitude,' interpreting the complaint to raise the 'strongest [claims] that [it] suggests.'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475, 474 (2d Cir. 2006)).

Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). See dkt. # 6. Defendants argue that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw ... all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

When assessing the sufficiency of a complaint, particular deference should be afforded to a *pro se* litigant. *Pro se* complaints merit a generous construction by a Court determining whether they state cognizable causes of action. Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'")(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)(internal quotations omitted)). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. Branum v. Clark, 927 F.2d 698, 704–05 (2d Cir. 1991); see also FED.R.CIV.P. 15(a) (leave to amend "shall be freely given when justice so requires").

## V. DISCUSSION

Defendants seek dismissal on various grounds, which the Court will address in turn.

### A. Section 1983 Claims

Defendants first argue that any claims brought pursuant to 42 U.S.C. § 1983 against Defendants Mary Ellen Dziarcak and Cynthia Wagner must be dismissed, as the Court has already dismissed any such claims with prejudice in reference to Plaintiff's initial Complaint. Defendants are correct. In resolving the earlier motion to dismiss, the Court concluded that Plaintiff had admitted that the Defendants were not state actors and had not acted under color of state law. Since such status is an essential element of a Section 1983, the Court dismissed such claims with prejudice. See dkt. # 24 at 10-14. To the extent that Plaintiff's Amended Complaint attempts to bring Section 1983 claims against these Defendants, those claims will be dismissed.

Plaintiff's Amended Complaint adds claims against DSNC. Plaintiff alleges that DSNC employed him as a certified nursing assistant. Amended Complt. at ¶ 4. He further alleges that "special bonds and obligations" are present "between DSNC and the government as a State control in which bureaucracy is the mechanism used to discriminate [against] me and my civil rights[.]" Id. at ¶ 14. This discrimination, he insists, occurred "because I was that person who complained against the Employer DSNC and its management that was tidily protected by corrupted agencies and the Jewish representatives I believed from NYS Government, e.g. John Meyers from Unemployment Insurance Benefits, NYSDHR Judge Protano, and EEOC Dir. Kevin

4

Berry." Id. As such, "DSNC acts on behalf of a governmental body." Id. Moreover, "NYS local government" and "agencies . . acted jointly with DSNC and Defendants to cover violation in spite of signed US EEOC federal rules at work and Anti-Harassment Policy." Id. at ¶ 15. DSNC had agreed to federal workplace rules and violated them; the government then covered up such violations to protect DSNC's business. Id.

Plaintiff brings his claim under 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, [plaintiff] must establish that he was deprived of a right secured by the Constitution or laws of the United States, and the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). No action exists for "'merely private conduct, no matter how discriminatory or wrongful.'" Id. (quoting Blum v. Yaretsky, 334 U.S. 1, 13 (1948)). To establish state action, Plaintiff must show that the person who caused his constitutional deprivation "'may fairly be said to be a state actor.'" Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259, 264 (2d Cir. 2014)(quoting Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111 (2d Cir. 2003)). State action requires a showing that "the 'allegedly unconstitutional conduct is fairly attributable to the State.'" Id. (quoting Sullivan, 526 U.S. at 50). When a plaintiff contends that a private actor violated his rights, the plaintiff proves state action "by demonstrating that 'there is such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Id. (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)).

To determine whether the behavior can be attributed to the state, the Court must "[identify] 'the specific conduct of which the plaintiff complains, rather than the general

5

characteristics of the entity.'" Id. (quoting Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012)). In making this determination, courts employ a number of factors, including "[t]hree main tests[.]" Fabrikant, 691 F.3d at 207. Those tests are:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the sate, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test').

Id. (quoting Syblaski v. Indep. Grp. Home Living Program, 546 F.3d 255, 257 (2d Cir. 2008)).

To make out a claim for state action under the "compulsion" test, a plaintiff must show that the state actor "exercised coercive power or ... provides such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum, 457 U.S. at 1004. (citations omitted). To prevail under the "joint action" test, Plaintiff must show that "[t]he State has so far insinuated itself into a position of interdependence with [Defendants] . . . that it must be recognized as a joint participant in the challenged activity." Burton, 365 U.S. at 725. Finally, to prevail under the "public function" test, Plaintiff must show that Defendants' functions as providers of nursing care are "'traditionally the *exclusive* prerogative of the State.'" Rendell–Baker, 457 U.S. at 842 (emphasis in original; citation omitted).

In his brief, Plaintiff contends that DSNC is a not-for-profit, Section 501(c)(3) charitable corporation. See dkt. # 47 at 3. DSNC works "[t]o develop and manage resources to fund services for . . . elderly men and women" in a setting "consistent with Jewish principles and ideas." Id. DSNC raises money to meet these goals. Id. Plaintiff

admits he lacks information showing joint action between DSNC and the government, but he contends that "[p]rivate actors like DSNC" are "state actors because they enforce state policies and EEOC rules and policy." Id. Moreover, DSNC has a "federal identification number" and follows numerous governmental directives and policies. Id. By virtue of these relations, Plaintiff insists, "Defendants acted as state actors in symbiotic relationship with the government for a Jewish community and have used policy enhanced with state policies and by the joint DSNC public function under NYS Government leadership."

    The Court finds that DSNC is not a state actor under any of these tests. Plaintiff has not alleged in his Amended Complaint or in his brief that DSNC in any way acted subject to the compulsion of the government, acted in concert with the government, or assumed a traditional government role; instead Plaintiff's arguments show that DSNC served as a private actor directed to private interests, many of them religious, and simply acted to obey federal and state laws and regulations. To the extent that Plaintiff argues that DSNC engaged in state action by the way the organization followed or misused state policies, such a claim is foreclosed because "private misuse of a state statute does not describe conduct which can be attributed to the State." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 940-41 (1982); see also, Sykes v. Bank of America, 723 F.3d 399, 407 (2d Cir. 2013)(compulsion theory does not apply to a bank where the "challenged conduct is of a piece with its recurring, customary, and usually unproblematic compliance with the directives of generally applicable state law."); Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259, 268 (2d Cir. 2014)(statutes and regulations demonstrate that New York is involved in licensing of

healthcare organizations, but that fact alone is insufficient to support a finding of state action). The Court will therefore grant the motion with prejudice with respect to any Section 1983 claims brought against DSNC as well.[2]

### B. Section 1981 Claims

Plaintiff also asserts claims under 42 U.S.C. § 1981, which provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). A plaintiff alleging a violation of this statute need not show state action. Phillip v. University of Rochester, 316 F.3d 291, 294-95 (2d Cir. 2003). "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute[.]" Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

Plaintiff's Amended Complaint alleges that "I am a 60 year old white Caucasian male, a resident of the State of New York." Amended Complt. at ¶ 1. Plaintiff does not

---

[2]Defendants argue separately that Plaintiff's "class of one" equal protection claims should be dismissed because Plaintiff has not alleged any state action. Defendants are correct, but the Court will not analyze this issue separately. A class of one equal protection claim is a Section 1983 claim. See Hayut v. State University of New York, 352 F.3d 733, 754 (2d Cir. 2003) (analyzing "class-of-one" equal protection claim as a Section 1983 claim). Because Plaintiff cannot allege state action, the Court will dismiss any claim brought pursuant to Section 1983, no matter the constitutional protection invoked.

allege that he is a member of a racial minority, a required element of Section 1981 claims in this Circuit. As such, he could not prevail on his Section 1981 claim against the Defendants. The Court will grant the motion to dismiss in this respect as well.

**C. ADA and Retaliation Claims**

Defendants next assert that any claims Plaintiff brings pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, et seq., are barred because Plaintiff failed to raise his claim within 90 days of receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). Any retaliation claims Plaintiff brings pursuant to the ADA or Title VII of the Civil Rights Act should also be dismissed, Defendants argue.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To "establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because his disability." Brady v. Wal-Mart Stores, 531 F.3d 127, 134 (2d Cir. 2008). Read generously, the Amended Complaint could also be seen to raise a claim for retaliation under Title VII, which prohibits retaliation against any employee who opposes discrimination prohibited by that act. See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an

employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title."). A plaintiff may also raise a retaliation claim for opposing a practice prohibited under the ADA. Cortes v. MTA N.Y. City Transit, 802 F.3d 226, n. 2, 233 (2d Cir. 2015) (Court treats Title VII cases as "applicable" to ADA claims "because 'the ADA explicitly incorporates all fo the enforcement powers, remedies, and procedures of Title VII.'") (quoting Smith v. Perkins Bd. of Educ., 708 F.3d 821, 827-28 (6th Cir. 2013)).

The filing of a discrimination claim with the EEOC is a prerequisite to bringing an ADA or Title VII claim in federal court. Harris v. City of New York, 186 F.3d 243, 247 (citing 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a)). "In order to be timely," the subsequent "claim under the ADA must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter." Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2012) (citing 42 U.S.C. § 2000e-5(f)(1)). A "presumption" exists "that a mailed document is received three days after its mailing," though a party may overcome that presumption by offering "'sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [him] by mail.'" Id. (quoting Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 526 (2d Cir. 1996)).

Here, Plaintiff's filings show that the EEOC mailed him a right-to-sue letter regarding the charges of disability discrimination that are included in this lawsuit on September 18, 2014. See Affidavit/Response to Defendant's First Motion to Dismiss, dkt. # 15. DSNC also received a copy of that letter. Id. Plaintiff would therefore be

10

required to file his Complaint within 90 days of receiving that letter. Plaintiff filed his initial Complaint on December 17, 2014. Any ADA claims alleged in that Complaint would likely be considered as timely filed, provided they were made against a party who could be liable under the ADA. The individual Defendants cannot be liable under that statute. The Court found that this initial Complaint did not allege any violation of the ADA, however. The original Complaint also failed to name DSNC as a defendant. The Court permitted Plaintiff to file an amended complaint that raised such a cause of action to the extent that he could.

Defendants' only argument against Plaintiff's ADA claims is that they are untimely because more than 90 days passed between receipt of the right-to-sue letter and the filing of the Amended Complaint against DSNC. Defendants are correct that on its face the ADA claims in the Amended Complaint are untimely. The original Complaint was timely filed, however, and the Court must undertake an additional inquiry to determine whether to grant Defendants' motion. Federal Rule of Civil Procedure 15(c)(1) provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading" and when "(C) the amendment changes the party or the naming of the party against whom a claim is asserted . . . and, if" within 90 days after filing of the original Complaint, "the party to be brought in by amendment:"

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for mistake concerning the proper party's identity.

11

Fed. R. Civ. P. 15(c)(1).

To "relate back" to the original Complaint and make the instant ADA claims timely as to DSNC, therefore, those claims must (a) arise out of the conduct in the original Complaint, (b) the added defendant must have had sufficient notice of the original action to avoid prejudice in defending the claim, and (c) the newly added defendant must have known "but for a mistake concerning the identity of the proper party," the new defendant would have been named in the Complaint. Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994). The ADA claim in the Amended Complaint clearly arises out of the "conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading," particularly because the Plaintiff proceeds *pro se* and is due a certain solicitude from the Court. Plaintiff's ADA claims in the Amended Complaint arise from the same conduct–firing him in part because he refused to work because of an alleged arm injury–that gave rise to the original Complaint. The Court also finds the second part of this test satisfied; the original Defendants are DSNC employees who were sued for conduct in the scope of their employment, and the same attorneys that represent them represent DSNC in this action. At this stage, such evidence is sufficient.

Courts have interpreted the third part of this test, however, in a way that precludes this Court finding that the Amended Complaint relates back to the original Complaint in a way that would allow Plaintiff to add DSNC as a Defendant on the ADA claim. The Second Circuit Court of Appeals has found that "[t]he requirement that a new defendant 'knew' he was not named due to a mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity."

Cornwell, 22 F.3d at 694. In Cornwell, the court found that an amended complaint did not relate back to the original complaint partly because plaintiff did not allege that her failure to include the added defendants in the original complaint was a "mistake concerning identity" and partly because the record demonstrated that "such an assertion" would not "be tenable." Id. Plaintiff knew the identities of the added defendants at the time she filed her amended complaint, and she filed an exhibit to her first complaint identifying those individuals and describing their conduct. Id. Plaintiff "was not required to sue them," and her failure to do so in the original complaint "must be considered a matter of choice, not mistake." Id. The Court must come to the same conclusion here. The Plaintiff surely knew of DSNC's identity. Plaintiff named DSNC as defendant in the EEOC Complaint and obtained a right-to-sue letter. The original Complaint described misconduct on DSNC's part, as well as on the part of DSNC's employees. The Complaint did not explicitly raise any ADA claims, however, even though Plaintiff had filed an EEOC complaint and received a right-to-sue letter. Under those circumstances, the Court cannot find that Plaintiff's failure to include DSNC as a Defendant was a result of a mistake in identity, rather than a choice. The Court will grant the Defendants' motion with respect to any ADA, ADA retaliation or Title VII retaliation claims Plaintiff purports to bring.[3]

### D. 18 U.S.C. §§ 1001, 654

---

[3] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). Since "the ADA . . . prohibits individual liability," Plaintiff cannot raise claims against the individual Defendants either. Herzog v. McLane Northeast, 999 F.Supp. 274, 276 (N.D.N.Y. 1998).

Defendants also seek dismissal of any claims Plaintiff brings pursuant to 18 U.S.C. §§ 1001 and 654. They contend that these statutes do not provide for private rights of action. Plaintiff insists that he may bring a claim based on either statute.

Federal law is clear that the "provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages." Cort v. Ash, 422 U.S. 66, 79 (1975). No private cause of action exits, however, with "nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind [is] available to anyone." Id. at 79-80. The Court will analyze each statute in turn.

18 U.S.C. § 1001 provides that:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly or willfully–
    (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
    (2) makes any materially false, fictitious, or fraudulent statement or representation; or
    (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry

is subject to criminal penalties. 18 U.S.C. § 1001(a); see Hubbard v. United States, 514 U.S. 695, 699 (1995) ("Section 1001 criminalizes false statements and similar misconduct occurring 'in any matter within the jurisdiction of any department or agency of the United States.'"). The statute in question here is clearly a criminal statute, aimed at fraud and concealment with respect to a government agency, and contains no implication or suggestion of a private right of action. Courts examining this statute have concluded that the statute contains no implied right of a civil action. See, e.g., Gause v. Rensselaer Children & Family Servs., 2010 U.S. Dist. LEXIS, * 7 (N.D.N.Y. Nov. 29, 2010); Federal Sav. & Loan Ins. Co. v. Reeves, 816 F.2d 130, 138 (4th Cir. 1987); John

v. Johl, 556 F.Supp. 5, 7 (D. Conn. 1981) ("It is clear that [Section 1001] cannot serve to provide the plaintiff, a private citizen, with a cause of action in this civil case."); Anderson v. Wiggins, 460 F.Supp.2d 1, 8 (Dist. D.C. 2006) (same). As such, the Court will grant the motion with respect to any claims under 18 U.S.C. § 1001.

The Occupational Safety and Health Act ("OSHA") mandates that an employer "furnish" every employee "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees" and comply with safety rules. 29 U.S.C. § 654. "Congress passed OSHA in 1970 in order to reduce the alarming number of personal injuries and illnesses arising out of hazardous working conditions, and 'to assure safe and healthful working conditions for working men and women [in the nation.'" Donovan v. OSHRC, 713 F.2d 918, 926 (2d Cir. 1983) (quoting Occupational Safety and Health Act of 1970, Publ. L. No. 91-596, 84 Stat. 1590, 1590). The Act sets up a scheme of regulations, inspections, citations and enforcement. See 29 U.S.C. § 655-660. While employees play a role in OSHA investigations and rulemaking, they "do not have a private right of action." Donovan. 713 F.2d at 926. Since Plaintiff lacks a private right of action under OSHA, the Court will grant the motion in this respect too.

### E. State Law Claims

The Court has dismissed all of Plaintiff's federal claims. As such, the only basis for the Court's continuing jurisdiction over the remaining claims–which all arise under New York law–is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). See 28 U.S.C. § 1367(a) (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

15

claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Of course, the Court "may decline to exercise supplemental jurisdiction . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Courts must consider 'the values of judicial economy, convenience, fairness, and comity' when deciding whether to exercise supplemental jurisdiction." Kroshnyi v. U.S. Pack Courier Servs., 771 F.3d 93, 102 (2d Cir. 2014) (quoting Carnegie-mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). Still, "if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" Brzak v. UN, 597 F.3d 107, 113-114 (2d Cir. 2010) (quoting Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008)).

The Court finds that the interests of judicial economy would best be served by dismissing Plaintiff's state-law claims. No discovery has yet occurred, and judicial resources would be best served by permitting Plaintiff to bring his claims in the courts most directly tasked with interpreting New York tort law. Dismissal will be without prejudice to bringing his state-law claims in an appropriate forum.

## VI: CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss, dkt. # 33, is hereby GRANTED. All federal claims against the Defendants are dismissed with prejudice. All of Plaintiff's state-law claims are dismissed without prejudice to him bringing such claims in an appropriate, non-federal, forum.

**IT IS SO ORDERED.**

Dated: September 22, 2016

_____
Thomas J. McAvoy
Senior, U.S. District Judge